UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

UNITED STATES OF AMERICA,

       -vs-                             1:07-CR-580

JOHN HOTALING,

             Defendant.

─────────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Andrew T. Baxter | Thomas Spina, Esq |
| Acting United States Attorney | Assistant U.S. Attorney |
| Northern District of New York | |
| James T. Foley U.S. Courthouse | |
| 445 Broadway | |
| Albany, New York  12207 | |
| | |
| Alexander Bunin | Gene Primomo, Esq. |
| Federal Public Defender | Assistant Federal Public Defender |
| 39 North Pearl Street | |
| Albany, New York  12207 | |
| *Attorney for Defendant* | |

**Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

I.      **Introduction**

      Defendant is charged in a one-count indictment with a violation of the Prosecutorial

Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT"),

codified in scattered sections of 18, 28, and 42 of the United States Code.  18 U.S.C. §§

2252A(a)(5)(B) and 2256(8)(C) criminalize possession of child pornography consisting of visual

depictions that have been "created, adapted or modified **to appear** that an identifiable minor is

engaging in sexually explicit conduct."  (emphasis added).  Presently before the Court is a motion

by defendant to dismiss the indictment on the ground that the definition of child pornography in 18 U.S.C. § 2256(8)(C) is unconstitutional as applied to him in light of the holding of the United States Supreme Court in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234 (2002).[1]

## II.      Factual and Procedural Background

According to the facts stipulated to by the government and defendant herein, the New York State Police executed a search warrant at defendant's home on January 18, 2005, and seized a desktop computer which contained images of six minor females ("Jane Does 1-6") who appeared to be engaged in "sexually explicit conduct" as that phrase is defined in 18 U.S.C. § 2256(2).  More specifically, the heads of the six minor females had been "cut" from original non-pornographic images and "pasted" over the heads of unidentified nude or partially nude females in various sex acts and/or lascivious poses.  One of the images depicts the face of defendant superimposed onto the body of a naked male who is engaged in sexual intercourse with a naked woman bearing the face and neck of Jane Doe #6.  Defendant obtained the non-pornographic images of Jane Doe #1 from a computer he was repairing for her family.  The non-pornographic images of Jane Does # 2-6 were created by defendant's daughters and their friends using digital cameras.  Defendant altered the non-pornographic images using a computer software program together with pornographic images he obtained via the Internet and his internet service provider America Online ("AOL").  There is no evidence that the bodies of the unidentified nude females in the altered images are those of minors.  However, the parties agree that the bodies depicted are not virtual or computer generated.

---

[1]  Defendant's motion also challenged originally the indictment's reference to 18 U.S.C. § 2256 (8)(A) which criminalizes possession of images which depict **actual** child pornography.  However, in its reply papers, the government conceded that the images at issue herein do not fall into said category.  Consequently the government consents to striking any reference to 18 U.S.C. § 2256 (8)(A) from the indictment.

Defendant stored some of the aforementioned images in computer files that could be used to create a website.  Along with files that contain "thumbnail" type image arrays, defendant stored index pages titled "[Jane Doe] Upstate NY's Hottest Teen."  These pages contain a notation that they were "generated with Arles Image Web Page Creator."  Nevertheless, there is no evidence that defendant published the subject images to a website or the internet or that he distributed the images to anyone.[2]

## III.   Discussion

A.   Constitutional Prohibition of Child Pornography

In *New York v. Ferber*, 458 U.S. 747 (1982), the United States Supreme Court first upheld a criminal ban on the distribution of child pornography that did not meet the traditional definition of "obscene" set forth in *Miller v. California*, 413 U.S. 15, 24 (1973) ("[crimes for pornography must . . . ] be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.") because of the legitimate state interest in protecting "the physiological, emotional, and mental health" of children.  *Ferber*, 458 U.S. at 758.  In *Ferber,* the Court emphasized that children are harmed not only through the actual production of pornography, "but also by the knowledge of its continued circulation."  *Id.* at

_____

[2] Defendant objects to the government's submission of "highly inflammatory and prejudicial" evidence concerning an investigation by the New York State Police of defendant's attempt via online communication to solicit a person he believed to be a minor into engaging in a sexual relationship.   In an affidavit, New York State Police Investigator George Bird details how this investigation led to seizure of defendant's computer and the alleged pornographic material identified in the indictment.  Investigator Johnstone avers that he assisted Investigator Bird in identifying and interviewing the minor "Jane Does" whose faces appeared in the images obtained from defendant's computer.  The government argues in its memorandum of law that although there is no evidence that defendant published these images to the internet, he was on the verge of doing so.  Because the legal issues raised by defendant may be resolved on the stipulated facts submitted by the parties, the Court finds it unnecessary to consider the weight or merit of these additional factual submissions by the government.

756-59 & n. 10.  Based in significant part on this psychological harm, the Supreme Court later upheld a statute criminalizing the mere **possession** of child pornography.  *See Osborne v. Ohio*, 495 U.S. 103, 110-11 (1990) ("[T]he materials produced by child pornographers permanently record the victim's abuse.  The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come.").

Moreover, in *Osborne, supra*, the Supreme Court recognized that it was "surely reasonable for the State to conclude that it will decrease the **production** of child pornography if it penalizes those who [merely] **possess** and view the product, thereby decreasing demand."  495 U.S. at 109-10 (emphasis added).  In *Osborne,* the Court noted that its earlier and seemingly inapposite holding in *Stanley v. Georgia*, 394 U.S. 557, 567 (1969) (states cannot criminalize mere private possession of obscene material), was a "narrow" one.  *Osborne*, 495 U.S. at 108. *Osborne* also observed that after the Court's decision in *Stanley*, "'the value of permitting child pornography has been characterized as exceedingly modest, if not de minimus.'"  *Id.* (quoting *Ferber*, 458 U.S. at 762).

B.      The CPPA and *Ashcroft*

Before 1996, Congress defined child pornography as the type of depictions at issue in *Ferber,* that is, images created using actual minors. 18 U.S.C. § 2252 (1994 ed.).  The Child Pornography Prevention Action of 1996 ("CPPA") retained that prohibition at 18 U.S.C. § 2256(8)(A) and added three other prohibited categories of speech, of which the first, section 2256(8)(B), and the third, section 2256(8)(D), were at issue in *Ashcroft.*  535 U.S. at 241.  Section 2256(8)(B) prohibited "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging

4

in sexually explicit conduct."  As the *Ashcroft* court explained:

> The prohibition [in section 2256(8)(B)] on "any visual depiction" did not depend at all on how the image was produced.  The section captures a range of depictions, sometimes called "virtual child pornography," which include computer-generated images, as well as images produced by more traditional means.  For instance, the literal terms of the statute embrace a Renaissance painting depicting a scene from classical mythology, a "picture" that "appears to be, of a minor engaging in sexually explicit conduct."  The statute also prohibits Hollywood movies, filmed without any child actors, if a jury believes an actor "appears to be" a minor engaging in "actual or simulated . . . sexual intercourse." § 2256(2).  These images do not involve, let alone harm, any children in the production process; but Congress decided the materials threaten children in other, less direct, ways. Pedophiles might use the materials to encourage children to participate in sexual activity.  "[A] child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity."  Congressional Finding (3),  notes following § 2251. Furthermore, pedophiles might "whet their own sexual appetites" with the pornographic images, "thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children."  *Id.*, Findings (4), (10)(B).  Under these rationales, harm flows from the content of the images, not from the means of their production.  In addition, Congress identified another problem created by computer-generated images: Their existence can make it harder to prosecute pornographers who do use real minors.  *See id.*, Finding (6)(A). As imaging technology improves, Congress found, it becomes more difficult to prove that a particular picture was produced using actual children. To ensure that defendants possessing child pornography using real minors cannot evade prosecution, Congress extended the ban to virtual child pornography.

*Id.* at 241-42.

Section 2256(8)(C) of the CPPA covered any visual depiction modified to appear that an actual minor was engaged in sexually explicit activity.  In *Ashcroft*, the Supreme Court described this provision as prohibiting a more "common and lower tech means of creating virtual images," known as "computer morphing."  535 U.S. at 242.  In lieu of creating original images,

5

"morphing" allowed pornographers to "alter innocent pictures of real children so that the children appear to be engaged in sexual activity." *Id.*

Finally, § 2256(8)(D) defined child pornography to include any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that convey[ed] the impression" it depicted "a minor engaging in sexually explicit conduct." "This provision prevent[ed] child pornographers and pedophiles from exploiting prurient interests in child sexuality and sexual activity through the production or distribution of pornographic material which is **intentionally pandered** as child pornography." *Id.* (citing S.Rep. No. 104-358, p. 22 (1996) (emphasis added)).

In *Ashcroft*, a California trade association for the adult-entertainment industry challenged §§ 2256(8)(B) and (D) as unconstitutionally overbroad. At the outset of its opinion, the Supreme Court restated the "general principle [that] while the First Amendment bars the government from dictating what we see or read or speak or hear," it did not embrace certain categories of speech "including defamation, incitement, obscenity and pornography produced with real children." 535 U.S. at 245 (citation omitted). Nevertheless, the Court held that the "speech" criminalized in the challenged provisions of the CPPA did not fall into any of the afore-referenced categories. Indeed, the Court found that § 2256 (8)(B) of the CPPA abridged First Amendment freedoms since it extended federal prohibition against child pornography to sexually explicit images that "appeared to" depict minors but were "produced without using any real children." *Ashcroft,* 535 U.S. at 240. Section 2256(8)(B) criminalized possessing or distributing images which could be created by using adults who only looked like minors or by using advanced computer imaging techniques to "create realistic images of children who do not exist." *Id.*. "By prohibiting child

pornography that [did] not depict an actual child," *id.*, § 2256(8)(B) of the CPPA "abridg[ed] the freedom to engage in a substantial amount of lawful speech" and was therefore overbroad and unconstitutional. *Id.* at 256.[3]

Importantly, the Supreme Court **rejected** an argument raised by the government in *Ashcroft* which contended that the overbreadth challenge to the CPPA was saved by an affirmative defense under the statute. *See Ashcroft*, 535 U.S. at 255. The Court found the so-called affirmative defense "incomplete and insufficient," however, in that it allowed distributors, but not mere possessors of child pornography to be exonerated upon showing the objectionable materials were produced using only adults. *Id.* (citing 18 U.S.C. § 2252A(c)).

C.    2003 Revised Legislation

Almost immediately after the *Ashcroft* decision was handed down, Congress began an effort to craft responsive legislation. The result was the PROTECT Act which defined child pornography to include, in addition to images of "real" children engaged in sexually explicit conduct, *see* § 2256(8)(A), digital or computer-generated images that are "indistinguishable"

---

[3] Like the text of the "appears to be" provision of § 2256(8)(B), the Court in *Ashcroft* also found the sweep of § 2256(8)(D) "was quite broad." *Id.* at 242. Though intended to punish pornographers and pedophiles who pandered knowingly material as child pornography, "[t]he statute [was] not so limited in its reach." *Id.* To wit, under the CPPA, "[o]nce a work ha[d] been described as child pornography, the taint remain[ed] on the speech in the hands of subsequent possessors, making possession unlawful even though the content otherwise would not be objectionable." *Id.*

> [T]he CPPA does more than prohibit pandering. It prohibits possession of material described, or pandered, as child pornography by someone earlier in the distribution chain. The provision prohibits a sexually explicit film containing no youthful actors, just because it is placed in a box suggesting a prohibited movie. Possession is a crime even when the possessor knows the movie was mislabeled.

Because § 2256(8)(D) punished "even those possessors who took no part in pandering," *id.* at 243, and "b[ore] no responsibility for how [the material] was marketed, sold, or described," it prohibited a substantial amount of speech that could not be circumscribed constitutionally. *Id.* at 258.

from images of actual minors engaging in sexually explicit conduct, *see* § 2256(8)(B), and visual

depictions that have been created or modified to appear as though an identifiable minor is

engaged in sexually explicit conduct. *See* § 2256(8)(C). The definition of "morphed" child

pornography as discussed in *Ashcroft* remained unchanged as between the CPPA and the

PROTECT Act. *See id.* However, the PROTECT Act extended the affirmative defense that each

person depicted in the alleged unlawful material "was an adult at the time the material was

produced" to defendants charged under 18 U.S.C. § 2252A(a)(1), (2), (3)(A), (4) and mere

possession offenses under (5). The PROTECT Act's new affirmative defense, however, that no

**"actual minor"** was involved in the production of pornographic images, *see* 18 § 2252A(c)(2)

(emphasis added), while available "to most possessors and distributors of these defined

materials," *see United States v. Williams*, 444 F. 3d 1286, 1296, n. 45 (11th Cir. 2006), *rev'd on

other grounds*, --- U.S.----, 128 S.Ct. 1830, 1838 (2008), was notably unavailable to those

defendants charged under § 2256(8)(C):

> Prosecutions brought under the definition of child pornography
> contained in section 2256(8)(C) generally charge the accused with
> having taken the **innocent** image of an **actual child** and "morphing"
> it into a sexually explicit depiction. Under current law (which was not
> challenged in *Ashcroft v. Free Speech Coalition*) **only one affirmative
> defense is available in a morphing prosecution: proof that only
> pictures of adults were used.** S. 151 keeps this affirmative defense
> intact. However, S. 151 explicitly excludes morphing prosecutions
> from the new affirmative defense that "the alleged child pornography
> was not produced using any actual minor or minors."

S.Rep. No. 108-002, 51 at n. 2 (2003) (emphasis added).

D.      Overbreadth Challenge

Based on the principles outlined in *Ashcroft* and its progeny, defendant asserts that 18

U.S.C. § 2256(8)(C) is unconstitutional as applied to him since it criminalizes mere possession of

8

"morphed" images, that is, images which have been altered to appear to depict identifiable minors engaged in sexually explicit conduct.  Defendant contends that no actual child engaged in the conduct or activities depicted in the altered images and they were produced "without exploiting minors."  Further, defendant argues that there is no evidence that he distributed or published the morphed images to anyone.  Indeed, defendant claims that he created these composite images merely to "record his mental fantasies."  Based thereupon, defendant argues that his First Amendment freedoms are infringed by application of 18 U.S.C. § 2256(8)(C) in the indictment.

Because the respondents in *Ashcroft* did not challenge § 2256(8)(C), the Court did not consider this provision of the CPPA directly.  In pointed dicta, however, the Court noted that "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*."  *Ashcroft,* 535 U.S at 242.  Since *Ashcroft,* only one Circuit has addressed directly the CPPA's prohibition against the possession and/or distribution of "morphed" images of child pornography.  In *United States v. Bach*, 400 F.3rd Cir. 622 (8th Cir. 2005), the defendant was indicted under the CPPA on various child pornography charges prior to the Supreme Court's decision in *Ashcroft.*  Though the indictment charged defendant Bach with criminal conduct that had occurred in or about August 2000, an interlocutory appeal delayed Bach's trial until after *Ashcroft* was decided in 2002.  Bach was thereafter convicted of receipt of child pornography under 18 U.S.C. § 2252A(a)(2) after a jury found he had knowingly received a visual depiction that "involve[d] the use of a minor engaging in sexually explicit conduct" or "ha[d] been created, adapted, or modified to appear that an identifiable minor [was] engaging in sexually explicit conduct."  *Bach*, 400 F. 3d at 629.  The trial court's instruction concerning the definition of child pornography

incorporated § 2256(8)(A), the definition of child pornography before the passage of the CPPA,

18 U.S.C. § 2251 *et seq*., as well as the definition in § 2256(8)(C) added by the CPPA. *See id.* at

630.

The pertinent facts underlying Bach's conviction were as follows:

> One email in Bach's account had been received from Fabio Marco in
> Italy; . . .. Marco's email to Bach had an attached photograph which
> showed a young nude boy sitting in a tree, grinning, with his pelvis
> tilted upward, his legs opened wide, and a full erection. Below the
> image was the name of AC, a well known child entertainer. Evidence
> at trial showed that a photograph of AC's head had been skillfully
> inserted onto the photograph of the nude boy so that the resulting
> image appeared to be a nude picture of AC posing in the tree.

Relying on *Ashcroft*, Bach contended that his conviction for receipt of child pornography under

these circumstances violated the First Amendment.  Specifically, Bach argued that the definition

of child pornography in § 2256(8)(C) covered images that only "appeared to depict an identifiable

minor" and that the definitions found unconstitutional in *Ashcroft* used similar language.  400 F.

3d at 630.  Bach argued morphed pornography, like virtual pornography, was protected by the

Supreme Court in *Ashcroft* "because it did not involve the abuse of a real minor and there was no

evidence that a real minor was used to produce the image with AC's head." *Id.*

The Eighth Circuit disagreed.  "In contrast to the definitions of child pornography in

subsections (B) and (D) [of the CPPA found unconstitutional in *Ashcroft*,] the definition in

subsection (C) targets harm to an **identifiable minor**." *Bach*, 400 F. 3d at 631 (emphasis added).

> Unlike the virtual pornography protected by the Supreme Court in
> Free Speech Coalition, the picture with AC's face implicates the
> interests of a real child and does record a crime. The picture depicts a
> young nude boy who is grinning and sitting in a tree in a lascivious
> pose with a full erection, his legs spread, and his pelvis tilted upward.
> The jury could find from looking at the picture that it is an image of
> an identifiable minor, and that the interests of a real child were

implicated by being posed in such a way.

*Id.* at 632.  Finally, the court noted:

> The interests of real children are implicated in the image received by
> Bach showing a boy with the identifiable face of AC in a lascivious
> pose.  This image involves the type of harm which can constitutionally
> be prosecuted under *Free Speech Coalition* and *Ferber.*

*Id.*

Defendant argues that the Eighth Circuit's holding in *Bach* was anchored to two facts

which are distinguishable in his own case.  First, defendant contends that he was charged with

mere possession of morphed images of child pornography while Bach was charged with **both**

possession **and** receipt of an image that actually recorded a crime against a child.  Second,

defendant states that unlike the defendant in *Bach*, who combined images of the head of an

identifiable minor and the body of another minor actually posed in a sexually explicit manner, he

merely morphed innocent photos of minors' heads and necks with images of adults and no

children actually engaged in sexual activities.

In support of the argument that his case is distinguishable from *Bach*, defendant relies on

*State v. Zidel*, 940 A.2d 255 (N.H. 2008), also decided after *Ashcroft*.  In *Zidel*, a case

astonishingly on point with the one at bar, the Supreme Court of New Hampshire overturned the

conviction of a man charged under state law with possession of morphed images of child

pornography.  To wit, the defendant in *Zidel* worked as a photographer at a children's camp in

Amherst in which capacity he photographed campers to be used in an end-of-summer video

yearbook or scrapbook.  940 A.2d at 256.  On the discs provided by Zidel to the camp, the

director "discovered images depicting heads and necks of minor females superimposed upon

naked adult female bodies, with the naked bodies engaging in various sexual acts." *Id.*[4] Zidel and at least one of his family members appeared in some of the images. The parties stipulated that, "[o]ther than necks and heads, there [was] no specific evidence that the images in question contain[ed] the body parts of actual children." *Id.*

The defendant in *Zidel* argued that applying New Hampshire's child pornography statute to his private possession of morphed images, namely "images created by combining the head and shoulders of a real, existing child, with images of adult bodies, real or virtual, engaging in sexually explicit conduct," violated his right to free speech under both the federal and state constitutions. *Id*. at 262. Like defendant in the present case, Zidel "d[id] not claim that the state or federal constitutions preclude[d] the government from criminalizing the **distribution** of such material." *Id.* (emphasis added). Rather, Zidel argued that "*Ashcroft*, *Ferber* and *Osborne*, read together, mandate the conclusion that morphed images, that depict actual children but depict no children actually engaging in sexually [ sic] activity, do not constitute child pornography." *Id.* According to Zidel, "the overall set of rationales and principles relied upon by *Ferber*, and reinforced by *Ashcroft*'s discussion of *Ferber*, support the narrow view that materials cannot be classified as child pornography unless children are involved in the production process -- not the 'post-production' process where images can be cut, pasted, and morphed -- but the . . . actual, sordid, filming or photography of child sexual abuse." *Id.*

The New Hampshire Supreme Court agreed with Zidel, holding that while *Ashcroft* may have, in dicta, classified morphed images of child pornography as "closer" to the prohibited

---

[4] One image shows an act of sexual intercourse; two images depict a person engaging in or about to engage in oral sex; two images depict a person digitally penetrating or touching a female's genitalia; and four images show comparably explicit sexual activity.

material in *Ferber*, *Zidel*, 940 A.2d at 264 (quoting *Ashcroft*, 535 U.S. at 242), *Ferber* involved

**distribution** of child pornography, not merely possession. *Id.* (citing *Ferber,* 458 U.S. at 751-

52). *Zidel* opined that "while distribution of these morphed images might implicate the interests

of real children, mere possession does not cause harm to the child." *Id.* at 264. "[I]n the private

possession realm, neither the real child nor the general public observes the images; only the

possessor views them." *Id.* (citing *Stanley v. Georgia*, 394 U.S. at 567).

      *Zidel* held that the harm caused by child pornography outlined in *Ashcroft* and *Osborne,*

such as recording "permanent[ly]" a record of abuse, "does not necessarily follow from the mere

possession of these morphed images." *Zidel*, 940 A.2d at 263 (citing *Osborne,* 495 U.S. at 111).

Instead, the prospective harm is "contingent upon the occurrence of another arguably unlawful

act; to wit distribution." *Id.* (citing *Ashcroft*, 535 U.S. at 250). *Zidel* distinguished the facts before

it from those in *Bach* on two grounds:

> First, in *Bach*, the defendant challenged his conviction "for **receipt** of
> child pornography under [18 U.S.C.] § 2252A(a)(2)," [400 F. 3d] at
> 629 (emphasis added), not **possession** of child pornography, *see* 18
> U.S.C. § 2252A(a)(5). A conviction under 18 U.S.C. § 2252A(a)(2)
> requires that a person "knowingly **receive** [ ] or **distribute** [ ] ... child
> pornography [or material that contains child pornography] that has
> been mailed, or shipped or transported in interstate or foreign
> commerce by any means, including by computer." 18 U.S.C. §
> 2252A(a)(2) (emphases added); *see Bach*, 400 F.3d at 630. Since these
> pictures do not remain within the privacy of a person's home, but
> instead disseminate into commerce, the interests of real children
> arguably may be implicated in such cases. Here, the defendant was not
> charged with receiving or distributing the images. *See* RSA
> 649-A:3(c)(f). . . . Second, unlike these morphed images, the *Bach*
> picture depicted a young nude **boy** engaged in sexually explicit
> activity. *Bach*, 400 F.3d at 632. Thus, in *Bach*, the creation of the
> photograph involved the use and sexual exploitation of a real child.
> In contrast, the record here contains no evidence indicating that any
> of these morphed images depict similar conduct by a real child.

13

940 A.2d at 264-65 (emphasis in original).  Thus *Zidel* concluded: 1) "where the naked bodies do not depict body parts of actual children engaging in sexual activity;" 2) no part of an image is "the product of sexual abuse;" and 3) a person "merely possesses the image," that "no demonstrable harm results to the child whose face is depicted in the image."  *Zidel*, 940 A.2d  at 263 (citing *Ashcroft*, 535 U.S. at 249).

Defendant contends that the *Zidel* court's analyses of *Ashcroft*, *Osborne* and *Bach* are correct and that the facts here are identical to those in *Zidel*.  Consequently he contends that 2256(8)(C) is unconstitutional as applied[5] to his private possession of morphed images.

1.     Substantive Legal Standard

"According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, --- U.S.----, 128 S.Ct. 1830, 1838 (2008).  The overbreadth doctrine is "strong medicine," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), to be used "'sparingly,'" *id*., and only when the overbreadth is not only real, but "substantial . . . judged in relation to the statute's plainly legitimate sweep." *Osborne*,

---

[5] Defendant initially termed his challenge to § 2256(8)(C) "limited" and only "as applied" to him.  Thus, the government asserted that defendant thereby conceded the facial validity of § 2256(8)(C).  In his reply memorandum, however, defendant does argue that the definition of child pornography in § 2256(8)(C) is either overbroad and/or vague and does not "pass[] constitutional muster" when  applied to a mere possessor of morphed pornography in which children appear to be engaged in sexual activity but in which no actual sexual activity by children occurred.  Whether his challenge is personal or asserted on behalf of all possession offenses under § 2256(8)(C), the substantive law which allegedly renders the statute invalid is the First Amendment.  *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp*., 462 F. 3d 219, 228 (2d Cir. 2006) ("Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated (facial, in all applications; as-applied, in a personal application)").  "Invariant, however," in either type of challenge, "is the substantive rule of law to be used." *Id*.  "In other words, how one must demonstrate the statute's invalidity remains the same for both types of challenges, namely, by showing that a specific rule of law, usually a constitutional rule of law, invalidates the statute, whether in a personal application or to all." *Id*. (citing *Nat'l Abortion Fed'n v. Gonzales*, 437 F.3d 278, 293-94 (2d Cir. 2006) (Walker, C.J., concurring) ("Facial challenges ... permit a single injured party to assert the claims of all future litigants by making a showing that each time that a statute is enforced, it will necessarily yield an unconstitutional result," but such challenges "provide[ ] no more relief than would be obtained over an exhaustive series of as-applied challenges")).

495 U.S. at 112.  The showing that a law punishes a "substantial" amount of protected free

speech, suffices to invalidate all enforcement of that law, "until and unless a limiting construction

or partial invalidation so narrows it as to remove the seeming threat or deterrence to

constitutionally protected expression."  *Broadrick*, 413 U.S. at 613; *see also Ferber*, 458 U.S. at

769, n. 24; *Dombrowski v. Pfister*, 380 U.S. 479, 491, and n. 7, 497 (1965).  However, as the

Supreme Court noted in *Broadrick*, there comes a point at which the chilling effect of an

overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that

law--particularly a law that reflects "legitimate state interests in maintaining comprehensive

controls over harmful, constitutionally unprotected conduct." 413 U.S. at 615.

2.      Application of § 2256(8)(C)

        Defendant does not argue that § 2256(8)(C) fails to reflect a legitimate state interest.

Rather, defendant contends that while prohibiting distribution of materials under § 2256(8)(C) is

acceptable, the statute also criminalizes mere possession of morphed pornographic images which

do not depict children engaged in actual sexual or lascivious activity.   The Court must examine

the scope of the statute before turning to defendant's specific argument concerning its unlawful

facial application.  *See Williams*, --- U.S.----, 128 S.Ct. at 1839 ("The first step in overbreadth

analysis is to construe the challenged statute; it is impossible to determine whether a statute

reaches too far without first knowing what the statute covers.").

a.      Express Purpose of Statute

        First, under 18 U.S.C. § 2256(8)(C), "child pornography" means "any visual depiction,

including any photograph, film, video, picture, or computer or computer-generated image or

picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit

15

conduct, where -- such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C). "[S]exually explicit conduct" under the statute means "actual or simulated --

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(B).

 In the context of the PROTECT Act, the Supreme Court has recently held that "'Sexually explicit conduct'" connotes actual depiction of the sex act rather than merely the suggestion that it is occurring[, a]nd 'simulated' sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks **or otherwise) it may not actually have occurred**." *Williams*, --- U.S.----, 128 S.Ct. at 1841 (emphasis added). "The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera." *Id.* The challenged statute also defines "producing" as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3). The definitions contained in the PROTECT Act clearly mean that any visual depiction of "sexually explicit conduct," produced or created in any part by using an identifiable minor, is subject to the statute's prohibition.

 This conclusion is supported by review of the defenses available to defendants charged with possession or distribution of child pornography under § 2256(8)(C). The PROTECT Act allows **only one** affirmative defense to a charge of unlawful possession of "morphed" images of child pornography -- that is, proof that "**each person** was an adult at the time the **material** was

**produced,**" 18 U.S.C. § 2252A(c)(1)(B) (emphasis added); *see also* S.Rep. No. 108-002, *supra*,

51 at n. 2. "Each person" clearly means each individual that appears in the visual depiction and

the "material" referred to this provisions is obviously the "visual depiction" which is "produced"

by computer morphing or other means. Importantly, the statute **does not** state what defendant

herein claims -- that one may exonerate oneself from criminal liability by proving that "each

person involved in the 'sexually explicit conduct' was an adult at the time the material was

produced." Indeed, the plain language of statute is directly at odds with defendant's premise

since it eliminates the defense that no "actual minor" was used in the "produc[tion]," 18 U.S.C. §

2252A(c)(2), of the material in any prosecution under § 2256(8)(C). Thus, to the extent that

defendant herein argues that as was decided in *Zidel*, the government is required to prove that he

used an actual child in the "production" of morphed pornography, that is "the actual, sordid,

filming or photography of child sexual abuse," he is manifestly wrong. *See Zidel*, 940 A.2d at

262.

b.    Legislative Intent

The implication of § 2256(8)(C) is apparent from the plain meaning of the statute. Any

doubt about whether the statute is constructed to apply to pornographic images -- morphed or

otherwise -- which only appear to depict identifiable minors engaged in sexually explicit conduct

is vanquished upon review of provision's legislative history. As previously noted, Congress

explicitly removed the affirmative defense that "no actual minor[s]" were used in the production

of morphed images of child pornography for defendants charged under § 2256(8)(C):

> The reason for this is simple. The affirmative defense [available to
> defendants charged under § 2252A(a)(1), (2), (3)(A), (4) or (5)]will be
> unavailable if the evidence shows that the image was produced,
> directly or indirectly, from the sexual abuse of a child. Thus, the

affirmative defense is unavailable both for a "first generation" image that directly records the sexual abuse of a child and for a later generation image that uses such an image. In either situation, it cannot be said that "the alleged child pornography was not produced using any actual minor or minors." **By contrast, the morphing provision is explicitly aimed at the creation of a sexually explicit image using an innocent image of a child.** Because many morphed images thus do not use, either directly or indirectly, a sexually explicit image of any child, it could be argued (incorrectly) by some that it does not involve any "use" of a child and fits within the affirmative defense. If such an argument were successful, it could defeat the entire point of the morphing provision. To eliminate any possible doubt on this issue, the morphing provision has been expressly excluded.

S.Rep. No. 108-002, 51 at n. 2 (2003) (emphasis added). Moreover, the Eighth Circuit agreed in *Bach* that § 2256(8)(C) was **intended expressly** to apply to innocent images of actual children manipulated to depict sexual conduct, even where such conduct **did not actually occur:**

Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. **Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity.** He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation.

*Bach*, 400 F. 3d at 632 (emphasis added).[6]  Indeed, *Bach* concluded "[t]he definition in [§ 2256(8)(C)] was intended by Congress to prevent harm to minors resulting from the use of 'identifiable images . . . in pornographic depictions, even where the identifiable minor is **not**

---

[6] Although *Bach* examined the impact of *Ashcroft* on § 2256(8)(C) of the former CPPA, the identical provision appears in the PROTECT Act as noted above.

**directly involved in sexually explicit activities**.'" *Bach*, 400 F.3d at 631 (quoting S. Rep. 104-358, at 8 (1996)).  Based on the foregoing, the Court finds that § 2256(8)(C) applies to any pornographic image in which an identifiable child "appears to be" engaged in sexually explicit conduct, even if no child actually participated in such activity at the time the material was produced.

3.       Overreach

        Having so construed the statute, the Court now turns to the question whether § 2256(8)(C) prohibits a "substantial" amount of protected speech.  According to defendant, neither he nor the defendant in *Zidel* "actually recorded a minor engaging in sexual activity:"

> Instead, both men created the images by superimposing non-offensive digital images of minors upon the bodies of adult women engaged in sexual acts and poses.  Neither man sought to distribute these images, so the children were never put at risk by entering the illegal child pornography market.   Further, the  pictures  were  created  using elementary digital editing in the privacy of their own homes.

Defendant's Memorandum, at 9.  Defendant urges the Court to adopt the construction of the Supreme Court of New Hampshire in *Zidel* which held that *Ashcroft* prohibits criminalizing possession of morphed images that depict identifiable minors on naked adult bodies when no child has actually engaged in sexual conduct.  This Court will not do so.  Although defendant relies on *Zidel* and its analysis of *Ashcroft* and *Bach*, he fails to reconcile *Zidel* with critical legal distinctions in his own case.  Moreover, while the court in *Zidel* endeavored to analyze *Ashcroft* and its impact on a New Hampshire statute which criminalized "morphed" images of child pornography, the application of *Zidel* to 18 U.S.C. § 2256(8)(C) is dubious given the plain reading of the PROTECT Act and the explicit legislative history of the challenged provision.

19

In *Zidel*, the court likened the state statute before it criminalizing possession of morphed or simulated child pornography to the federal statute at issue in *Bach*, that is, the CPPA as it existed in 2000 and after parts of said legislation were rendered unconstitutional by the Supreme Court in *Ashcroft*.  Defendant here is not charged with possessing morphed child pornography under the CPPA, however, he is charged with an updated version of said federal offense under the PROTECT Act.  When it construed *Bach* in January 2008, *Zidel* failed to recognize that passage of the PROTECT Act was a legislative attempt to cure some of the infirmities in the CPPA identified by *Ashcroft*.  As referenced above, the PROTECT Act: 1) extended the affirmative defense that each person depicted in an alleged image of child pornography "was an adult" at the time the material was produced, 18 U.S.C. § 2252A(c)(1)(B), to possessors of child pornography; and 2) created a new defense that the material was produced without using "actual minor[s]."  18 U.S.C. §2252A(c)(2).  However, the PROTECT Act eliminated expressly the defense in § 2252A(c)(2) for anyone charged with possessing "morphed" images of child pornography under § 2256(8)(C).  Assuming *arguendo,* that the CPPA created doubt about whether it applied to morphed pornographic images of identifiable minors when no minors actually engaged in the sexual acts depicted, the PROTECT Act erased it.  It is evident from the plain meaning of the PROTECT Act and its explicit legislative history that the alleged "innocence" of the picture is not a defense to § 2256(8)(C) if an identifiable minor is depicted therein.  Thus, the holding in *Zidel* is inapposite to the present case since it is based on an inaccurate assessment of current federal law.

To the extent that defendant relies on *Zidel* for the general proposition that "no demonstrable harm," 940 A.2d at 263, results to a child whose face, but not his or her naked

body, is depicted in a pornographic image, this Court strongly disagrees.  The court in *Zidel*

seized upon two phrases used by the Eighth Circuit in *Bach* in concluding that the images

possessed by defendant Zidel were harmless and protected by the First Amendment.  To wit, the

Supreme Court of New Hampshire quoted *Bach*'s recognition that "'[t]his is not the typical

morphing case in which an *innocent* picture of a child has been altered to appear that the child is

engaging in sexually explicit conduct,' and 'there may well be instances in which [§ 2256(8)(C)]

violates the First Amendment.'" *Zidel,* 940 A.2d at 264 (quoting *Bach*, 400 F. 3d at 632)

(emphasis in original).[7]  The court's emphasis on the word "innocent" in the quotation from *Bach*

suggests that the Supreme Court of New Hampshire was persuaded that *Bach* was distinguishable

based on the absence of **actual sexual conduct** by children in the morphed images created by

Zidel.

Notably, *Zidel* overlooked *Bach*'s recognition that AC, the minor child depicted in a

lascivious pose, was harmed even though he **had not actually engaged** in the conduct depicted in

the morphed photo.  Indeed, *Bach* noted that "the nude body actually is [not] that of AC" nor was

AC "involved in the production of the image."  *Bach* at 632.  Nevertheless, "a lasting record ha[d]

been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity."

*Id.*  The court in *Zidel* failed to recognize that *Bach* focused at least partly on the harm to AC, the

---

[7] Moreover, *Zidel* quoted the above-referenced two statements from *Bach* as though they were used in the same sentence.  In fact, *Bach*'s description of a "typical morphing case" and its assertion that "there may well be instances in which [§ 2256(8)(C)] violates the First Amendment" appeared a rather lengthy paragraph apart and in distinct contexts.  *Bach*, 400 F. 3d at 632.  Moreover, although *Zidel* did not misquote the language from *Bach* concerning the CPPA's morphing provision, the court **omitted** the critical citation which followed *Bach*'s statement concerning alteration of an "innocent picture."  Specifically, *Zidel* failed to note that *Bach* relied on the explicit legislative history of § 2256(8)(C) of the PROTECT Act, unchanged from the CPPA, in characterizing a "typical" morphing case.  *See Bach* at 632 ("[T]he morphing provision is explicitly aimed at the creation of a sexually explicit image using an innocent image of a child.") (quoting S.Rep. No. 108-002, at n. 2 (2003)).

child who had **not** engaged in sexually explicit activity, in rejecting the defendant's argument. Based on its failure to analyze properly the nuances of *Bach* and the particular facts before it in light of current federal law, *Zidel* reached the improvident conclusion that lack of actual sexual conduct on the part of identifiable minor in a morphed image - if such an image is merely possessed and not distributed by a defendant - renders it protected speech under the First Amendment.  *See Zidel*, 940 A.2d at 264-65.

The Court notes that the holding of *Zidel* is at odds with every other federal and state court which has confronted, even indirectly, the constitutional question raised by the dicta in *Ashcroft* concerning statutes which impose criminal penalties for possession of morphed images of child pornography.  To wit, in *United States v. Hoey*, 508 F. 3d 687 (1st Cir. 2007), the defendant appealed from a four-level sentence enhancement for possession of material "that portray[ed] sadistic or masochistic conduct or other depictions of violence."  508 F. 3d at 689 (citing U.S.S.G. § 2G2.2(b)(4)).  The image relied on by the district court in applying the enhancement "portray[ed] a young boy with an expression of pain and disgust who [was] being anally penetrated by the penis of a much older man.  The relative sizes of the man's penis and the small boy, in addition to the boy's expression, all suggest[ed] the likelihood of ongoing pain."  *Hoey*, 508 F. 3d at 691.  In Hoey's view, the "image depict[ed] a man about to penetrate, but not yet penetrating, the child, so the image necessarily [could] not be of sadism."  *Id.* at 692.  Hoey contended that the government was obligated to prove the portrayed conduct actually occurred to justify the sentencing enhancement.  *See id.*  Specifically Hoey claimed that the prosecutor was required to have proven "not only that the child [was] real, but that the sadism [was] as well."  *Id.*

The court "rejected" the premise of Hoey's argument as "wrong":

22

> That an image " **portrays** sadistic or masochistic conduct" does not
> require that it depict actual sadistic conduct, *id*. (emphasis added); if
> that were the Sentencing Commission's intent, there would be express
> language to that effect.  The language it did choose is to the contrary.
> Webster's Third New International Dictionary defines "portray" as "to
> represent by drawing, painting, engraving," "to describe in words,"
> and to "enact." The Guidelines simply do not require the image to be
> an accurate documentation of real sadistic conduct.

*Id.*  The First Circuit found "no conflict between [U.S.S.G. §] 2G2.2(b)(4) and the child

pornography statute as interpreted by *Ashcroft v. Free Speech Coalition*."  *Id.*  The court noted

that both *Ferber* and *Ashcroft* emphasized children are harmed "not only through the actual

production of pornography, but also by the knowledge of its continued circulation."  *Id*. at 693.

Based "in significant part" on this psychological harm, the court in *Hoey* noted that the Supreme

Court "upheld a statute criminalizing the mere possession of child pornography."  *Id.* (citing

*Osborne*, 495 U.S. at 110-11) ("[T]he materials produced by child pornographers permanently

record the victim's abuse.  The pornography's continued existence causes the child victims

continuing harm by haunting the children in years to come.")).

The First Circuit found that "[it was] this continuing psychological harm that Hoey

overlook[ed]."  *Id.*  "An image of an identifiable, real child involving sadistic conduct -- even if

manipulated to portray conduct that was **not actually inflicted** on that child -- is still harmful, and

the amount of emotional harm inflicted will likely correspond to the severity of the conduct

depicted."  *Id.* (emphasis added).  It was for this reason that the federal child pornography statute

defined "child pornography" as including a "visual depiction [that] has been created, adapted, or

modified to appear that an **identifiable minor** is engaging in sexually explicit conduct."  *Id.*

(quoting 18 U.S.C. § 2256(8)(C) (emphasis added)).  In support of its conclusion, the court cited:

1) the Supreme Court's "careful[] reserv[ation]" of consideration of § 2256(8)(C) in *Ashcroft*; 2)

23

the above-cited dicta relating "manipulated images of identifiable children" to the images in

*Ferber*, *see id.* (citing *Ashcroft*, 535 U.S. at 242); and 3) the "similar reasoning" of the Eighth

Circuit's holding in *Bach*.  *Id.* (citing *Bach*, 400 F.3d at 629-32).

In the unreported decision of *Cobb v. Coplan*, 2003 WL 22888857, at *7-8  (D.N.H. Dec.

8, 2003), the district court rejected the defendant's arguments that his photo "collages"  made by

juxtaposing adult nude bodies with cut-outs of children's faces taken from children's catalogs

were protected by the First Amendment.  The court found defendant Cobb's collages were "not

the sort of 'virtual pornography'" described by *Ashcroft* Court as falling within the scope of

section 2256(8)(B), "since those collages **did** involve real children."[8]  *Id.* (emphasis in original)

(citing *Ashcroft*, 535 U.S. at 241).  The court in *Cobb* determined that "[i]mages of [the sort

contrived by the defendant] . . . are the prohibited "morphed" material addressed in § 2256(8)(C),

since "computer morphing involves **altering photographs of actual children to make it appear**

that those children are engaged in sexually explicit conduct."  *Id.* (emphasis added).

Finally, in *State v. Monahan*, 2003 WL 1666665 (Me. Super. March 5, 2003), a Superior

Court in the State of Maine held as an alternative ground for revoking probation for a defendant

accused of possessing child pornography that:

> *Ashcroft* cannot be seen to proscribe a prohibition against apparent
> sexually explicit conduct -- as long as the person depicted is actually
> a child because the depiction of actual sexually explicit conduct can
> be as harmful as the depiction of apparently sexually explicit conduct.
> Whether the depiction is of a child who is actually engaged in, for
> example, bestiality, or it is of a child who only **appears to be** engaged

---

[8] Indeed, the District of New Hampshire noted that "[u]nlike a Renaissance painting of a fictitious subject or a Hollywood movie that employs adult actors who simply appear to be minors, Cobb's collages involved pornographic images of real children." 2003 WL 22888857, at *8.  "In that regard, they implicate[d] concerns identified in both *Ferber* and *Ashcroft*, insofar as a lasting record ha[d] been created of those children seemingly engaged in sexual activity." *Id.*

> in such conduct, the exploitation and damage caused by the sexual
> abuse of children obtains.  Therefore, even if the state's motion must
> be seen to rest on section 2924(1)(F) [possession of material which
> contains "the appearance" of sexually explicit conduct by persons
> under the age of 14 as opposed to § 2924(1)(F) which criminalizes
> materials depicting actual sexual activity by children], that statutory
> formulation is constitutionally sound.

2003 WL 1666665, at *2-3 (emphasis added).

This Court holds that the creation and possession of pornographic images of living,

breathing and identifiable children via computer morphing is not "protected expressive activity"

under the Constitution.  *Williams*, --- U.S.----, 128 S.Ct. at 1841.  As discussed above, these

images "implicate the interests of real children" and are "closer" to the types of images placed

outside the protection of the First Amendment in *Ferber*.  *Ashcroft*, 535 U.S. at 242, 254 ("in the

case of material covered by *Ferber*, **the creation of the speech is itself the crime of child**

**abuse"**) (emphasis added); *see also Williams*, --- U.S.----, 128 S.Ct. at 1841-42 ("categorical[ly]

exclu[ding]" child pornography as protected expression is "based . . . on the principle that . . .

what it is unlawful to possess ha[s] no social value and thus, like obscenity, enjoy[s] no First

Amendment protection.") (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human*

*Relations*, 413 U.S. 376, 387-89 (1973) (balance of internal citations ommited).

Thus, 18 U.S.C. § 2256(8)(C), which criminalizes morphed images of child pornography

created without the filming or photographing of actual sexual conduct on the part of an

identifiable minor, does not violate the First Amendment.  The statute's definition of child

pornography "precisely tracks the material held constitutionally proscribable in *Ferber* and

*Miller*: obscene material depicting (actual or virtual) children engaged in sexually explicit

conduct, and any other material depicting **actual children** engaged in sexually explicit conduct."

*Williams*, --- U.S.----, 128 S.Ct. at 1839 (citing *Free Speech Coalition*, 535 U.S. at 245-246 (First

Amendment does not protect obscenity or pornography produced with actual children).  There is

no doubt that this prohibition falls well "within constitutional bounds," *id.* at 1841-42, for "it is

evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and

psychological well-being of a minor' is 'compelling.'" *Ferber*, 458 U.S. at 756-58 (citations

omitted). "Th[is] legislative judgment, as well as the judgment found in relevant literature, is that

the use of children as subjects of pornographic materials is harmful to the physiological,

emotional, and mental health of the child," which judgment "easily passes muster under the First

Amendment." *Id.*

E.      Vagueness Challenge

        Defendant further contends that § 2256(8)(C) is unconstitutional because of "vague'

statutory language.

>        [The] vagueness doctrine is an outgrowth not of the First Amendment,
>        but of the Due Process Clause of the Fifth Amendment.  A conviction
>        fails to comport with due process if the statute under which it is
>        obtained fails to provide a person of ordinary intelligence fair notice
>        of what is prohibited, or is so standardless that it authorizes or
>        encourages seriously discriminatory enforcement.      Although
>        ordinarily "[a] plaintiff who engages in some conduct that is clearly
>        proscribed cannot complain of the vagueness of the law as applied to
>        the conduct of others," we have relaxed that requirement in the First
>        Amendment context, permitting plaintiffs to argue that a statute is
>        overbroad because it is unclear whether it regulates a substantial
>        amount of protected speech. But "perfect clarity and precise guidance
>        have never been required even of regulations that restrict expressive
>        activity."

*Williams*, --- U.S. ----, 128 S.Ct. at 1845 (internal citations omitted).  The Court first notes that

defendant asserts a bald "void for vagueness" challenge with no factual or legal support for his

argument that it would be unclear to an ordinary person what is prohibited by § 2256(8)(C).  In

26

any event, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 1846.

There is no such indeterminacy here. The statute defines child pornography as morphed images of "identifiable minors" engaged in sexually explicit activity. This requirement, together with an express exclusion of a defense for those who create such images without using actual children, leave no doubt the provision intends to criminalize the mere possession of pornographic images of children even when the images are morphed and no children actually engaged in the sexually explicit conduct depicted therein.

**IV.   Conclusion**

Based upon the foregoing, defendants' motion to dismiss the indictment based on constitutional infirmity must be DENIED.

IT IS SO ORDERED.

Dated: December 4, 2008
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

27